## Warren Gilbert v. Asa A. Kennedy.

*Pleading and evidence: Trespass laid with a continuando.* On the trial of an action of trespass, the alleged wrong being laid with a *continuando*, the plaintiff having proved a distinct act of trespass prior to the time alleged in the declaration, by such proof elects to put his right to a recovery on the trespass thus attempted to be established ; and evidence of any further grievances is inadmissible.

*Trespass quare clausum: Damages.* Damages in trespass *quare clausum fregit* will be such as are appropriate to the tenure by which the plaintiff holds, and such as result from the injury he has suffered; he must show that his title gives him an interest in the damages he claims, and he can recover none except such as affect his own right. If it appear that he is not the owner of the land, but holds under a written lease, and the damages are not confined to an injury to the possession only, the plaintiff will not be allowed to prove the nature of his tenure by parol. The written lease must be produced.

*Costs for attendance of witnesses.* Costs may be taxed for witnesses who attend in good faith, although they are not sworn, if, as the case appeared when they were summoned or retained, there was a necessity for their attendance, and they were called no sooner, nor kept longer, than the apparent necessity existed. Affidavits to justify the taxation for their attendance must clearly show their materiality and necessity.

*Double costs.* Double costs under the statute, (*Compiled Laws*, § *3736*,) must be construed according to the common-law rule, to mean single costs and one-half added.

*Heard October 18, 19. Decided October 25.*

Error to Lenawee Circuit.

This was an action of trespass *quare clausum fregit* brought by Asa A. Kennedy, before a Justice of the Peace in the County of Lenawee, against Warren Gilbert. The plaintiff declared in writing,—"For that heretofore, to wit: on the twenty-fourth day of June, one thousand eight hundred and sixty-eight, at Rome, in said County of Lenawee, and on divers other days and times, between that day and the commencement of this suit, with force and arms, etc., broke and entered the close of the plaintiff, situate,"— describing the place where the alleged trespass was committed, and setting forth specially the acts complained of.

The defendant pleaded the general issue, and gave notice of title in himself, whereupon, under the statute, the cause

was certified to the Circuit Court for the County of Lena-
wee, where it was tried by a jury, who found a verdict for
the plaintiff of one hundred dollars, upon which judgment
was rendered and double costs taxed in favor of the plaintiff.

The questions for review in this Court arise upon the
admissibility of testimony and upon the taxation of costs.
The questions which were objected to and allowed by the
Circuit Judge, on which error is assigned, are stated in the
opinion of the Court.

After judgment the costs were taxed by the Clerk upon
notice at, for single costs $473.15, of which $390.66 were
allowed for travel and attendance of witnesses; and under
the statute (*Comp. Laws,* § *3736*), which allows double
costs to a plaintiff recovering a judgment in the Circuit
Court in a case commenced before a Justice of the peace
and transferred to the Circuit Court upon the defendant's
plea of title,—the Clerk taxed the amount to which the
plaintiff was entitled at $960.30.

The affidavit of the plaintiff of his disbursements for
witnesses states " that the following named persons attended
court as witnesses," etc., and avers:—"That deponent pro-
cured the attendance of all of them in good faith, believ-
ing that their testimony and the testimony of each of them
would be material, to-wit: 1. At the first session in March,
one thousand eight hundred and seventy, commencing
March fifteenth, and ending (by adjournment over one
week) on March twenty-sixth. [Then follow the names of
thirty-four witnesses, stating the number of the days of
the attendance of each.] 2. At the session in the March
term, one thousand eight hundred and seventy (after the
adjournment), commencing April fifth. [Then follow the
names, attendance and mileage of twenty-two witnesses.]

" And deponent further says, that said witnesses were all
subpœnaed, or their attendance otherwise procured, for the

GILBERT v. KENNEDY.

first day of term, and were not discharged until the trial ended, which was Wednesday, the sixth day of April, and that the time as above stated is from the commencement of the term until the close of the second week, (when the court adjourned over until the fifth day of April), during which adjournment they were allowed to go home, to return again on the said fifth day of April. Except this time they were under subpœna to attend all the time, with the exception of those of them who only attended at the second session as above mentioned.

"Deponent further says, however, that on the first day of the term there was an arrangement and understanding between the counsel and the court, that the case should not be tried before the fifth day of April, and, on this account, deponent told most of his witnesses at that time, that they would not be wanted until the fifth of April, and thereupon, most, or all of them, as deponent believes, went home, promising to be here on that day. That the time the said witnesses were in actual attendance at the court, exclusive of the time they were so allowed to be absent from the same, as aforesaid, appears in the subjoined table, together with the number of miles traveled by them, respectively, in coming from their residences at each time.

"And deponent further says, that a number of said persons were not called and sworn in the case, though they were subpœnaed, or their attendance procured, in good faith, in anticipation of a defense to be made by the defendant, in accordance with his notice under the plea of the general issue in said cause, but that, unexpectedly to deponent, the defendant did not call any witnesses on the defense, and for this reason it became unnecessary to call such witnesses on the part of deponent."

Upon a retaxation of the costs before the Circuit Judge, he decided that plaintiff shall be allowed to tax for travel

GILBERT *v.* KENNEDY.

and one day's attendance on the first day of the March term, one thousand eight hundred and seventy (that being the term at which said cause was tried), and for a second travel and one day's attendance, commencing at noon on the fifth day of April, in said March term (that being the time to which said cause was postponed and at which said cause was tried), for five witnesses who were sworn and testified on behalf of the plaintiff, amounting at single costs to $18.77. And further, that the plaintiff should be allowed on such taxation for the travel and one day's attendance, on the said first day of said March term, and for a second travel and one day's attendance, commencing on said fifth day of April, in said March term, for twenty-nine persons, named as witnesses for said plaintiff in said cause, none of whom were ever called, sworn, offered or testified as witnesses on the trial of said cause, amounting at single costs to $73.13; which decisions of the Circuit Judge were excepted to by the defendant below, and on which error is assigned.

The Circuit Judge further decided that the double costs contemplated by the statute, consisted of twice the amount of single costs, and that the plaintiff should be allowed for, and as his double costs, twice the amount of his single costs, which decision was excepted to, and on which error is assigned.

*C. A. Stacy* and *A. Howell,* for plaintiff in error.

Both counts of plaintiff's declaration allege the commission of trespass by the defendant (Gilbert) upon the plaintiff's close, upon the 24th day of June, 1868, and on divers other days and times, between that day and the commencement of suit,—August 4, 1868.

Under this declaration plaintiff was allowed to prove,

after defendant's objection, the trespasses committed on April 28, 1868, and on the Monday following,—May 4; and was then allowed to prove, after objection, the commission of two trespasses within the time—June 24 to August 4—alleged in the declaration.

Under such a declaration, where the trespasses are alleged to have been committed on divers days and times between a certain day and the commencement of suit, the plaintiff is at liberty to prove one, or any number of trespasses committed within the time named; or, he may waive the right to prove any act within the days named in the declaration, and instead thereof, prove one distinct trespass committed before that space of time, and within the limits prescribed by the statute of limitations. But he cannot do both, he must waive one or the other. He is bound to make his election before he begins his evidence.—*1 Chitty's Pl.*, \**393–4; 2 Greenleaf's Ev.*, § *624, and N. 2; Pierce v. Pickens, 16 Mass., 470; 1 Phil. Ev., Cow. Hill & Ed. notes, 856; Gould's Pleading, 106–107.* And, therefore, when he proposed his questions, indicating proof of trespass prior to June 24, defendant below interposed his objections, thereby, so far as he could, putting plaintiff to his election. Plaintiff proceeded, however, by the answers to these questions, to introduce proofs of trespasses committed April 28, and May 4, thereby electing to proceed upon these trespasses, and from that moment those trespasses of April and May became the trespasses alleged in the declaration. Plaintiff made them so by his election, he could not elect again, nor prove any trespass on the 24th of June, or subsequent thereto.—See *People v. Jenness, 5 Mich., p. 327.*

The testimony shows that plaintiff's possession and interest in the farm was that of a lessee merely. The question, "What was the damage to the farm, and to you as

the possessor, done by those cattle of Gilbert's from the 24th of June to August 4th, by reason of feeding off and trampling down the pasture and thus destroying the feed?"—And the answer, "At least $100," includes two elements or classes of damage. 1st, the damage to the plaintiff as possessor—lessee; this includes every kind and all damage injurious to plaintiff, and for which he had any right to recover. 2d, the damage to the farm, that is to the reversion or inheritance; this damage was injurious only to the owner of the fee, and he alone had the right to recover for it.—*Gourdier v. Cormack,* 2 *E. D. Smith,* 200; *Sedgwick on Dam.,* (134), *note.*

A landlord may have an action for the injury to the inheritance,—and a tenant for the injury to his possession.—*Stark v. Jackson,* 11 *Mass.,* 519; 2 *Comp. Laws,* § 2810.

The trespasses complained of were continuous, extending down to October 12, 1868. When for a continuous wrong, successive actions may be brought for the continuance, plaintiff is limited in his right of recovery to damage sustained at the commencement of the suit. Hence proof, and the instruction directing the assessment of damages, for time after August 4th, was erroneous.—*Caldwell v. Murphy,* 1 *Duer,* 233; *Bathishill v. Reed,* 37 *Eng. L. and Eq.,* 317; *Smith v. Peet,* 9 *Exch.,* 161; *Sedgwick on Dam.,* (139), *n. 1 and* (109); *Blunt v. McCormack,* 1 *Denio,* 283; *Cole v. Sprowl,* 35 *Maine,* 161; *Town of Troy v. Cheshire R. R. Co.,* 3 *Fost.,* (*N. H.*), 83; *Robinson v. Bland,* 2 *Burr.,* 1077 and 1086.

On the taxation of costs the Circuit Judge allowed plaintiff for the travel and attendance of 29 witnesses, who were never sworn or offered as witnesses in the case; to this allowance defendant excepted. The affidavit for taxation fails to show that the attendance and charge for so

many persons who were not offered as witnesses, was either necessary or reasonable. The statute requires the taxing officer to strike from bills presented for taxation, all charges for services which in his judgment were not necessary; and disbursements shall not be allowed unless they appear to have been necessary and reasonable in amount.— *Comp. Laws*, §§ *5634, 5635.* Where a party charges for the attendance of so large a number of persons who were never offered as witnesses, he should show sufficient facts and circumstances, to enable the taxing officer to judge of the necessity of the attendance and reasonableness of the charge.—*Comp. Laws,* §§ *5634, 5635 ; Andrews v. Cressey, 2 Minn., 67 ; Dean v. Williams, 6 Hill, 376 ; Irwin v. Deyo, 2 Wend., 285 ; Com. v. Wood, 3 Binn., 414; Taylor v. McMahan, 2 Bailey, 131.*

The ruling of the Circuit Judge upon the motion for re-taxation of costs, that the double costs to which plaintiff was entitled under *Comp. Laws,* §§ *3735, 3736,* consisted of *twice* the amount of the single costs, was erroneous. When a statute gives double costs, the true mode of estimating them, is to allow the party the single costs, including the expenses of witnesses, counsel fees, etc., and then to allow him one-half the amount of these single costs in addition.—*2 Tidd's Prac., 987–8 ; 3d Am. Ed., *1025 ; 4th Am. Ed., *987–8 ; 2 Archbold's Prac., 291 ; Staniland v. Ludlum, 4 B. & C., 889 ; 10 C. L., 465.* And treble costs consists of, 1, the single costs; 2, half of these, and the half of the latter.—*2 Tidd's Pr., 1025 ; 2 Archb. Pr., 29 ; 1 Chitty's Gen. Pr., 27 ; Buckle & Bewes, 4 B. & C., 154.* Such are double and treble costs at common-law. Our statutes have also defined double costs.    *Comp. Laws,* §§ *5605, 5606.*

These sections of our statutes are copied from *2 N. Y. R. S., p. 617, §§ 24, 25.* Previous to the enactment of

these sections in New York, it seems to have been the practice in that State to tax double costs at twice the amount of the common costs. But after their enactment, the Supreme Court, referring to those sections, say: "The Legislature have defined what they mean, by allowing *double costs,* viz: The common costs and one-half thereof in addition, adopting the mode of computation, common in England."—*Patchen v. Parkhurst, 9 Wend, 443.* And this construction, and definition of double costs, has prevailed since that time.—*Graham's Prac., 2 ed., 732; 1 Burrill's Pr., 276; 2 Burrill's Pr., 115; People etc. v. Adams, 9 Wend., 464; Seymour v. Billings, 12 Wend., 285, 288; Dockstader v. Sammons, 4 Hill, 546; Cheney v. Windsor, 5 Denio, 96; Barber v. Crossett, 6 Howard Pr. R., 47; Calkins v. Williams, 5 idem., 393; Bartlett v. Gillman, 18 N. Y., 260.* The decision in *9 Wend., 443,* construing the N. Y. statute referred to, as a definition of double costs, was made before we adopted and enacted these sections; and independent of the common-law definition of the words "double costs," our Legislature, in adopting these sections from the N. Y. statute, would be considered as adopting them with the construction her courts had put upon them.—*Mich. Nisi Prius, 208.* The term, "double costs," has also a common-law signification, a technical meaning, and where words have such a meaning, or where a common-law definition is used in a statute, it is to be presumed that it is used in the common-law sense, unless there is distinct evidence to the contrary.—*Pitcher v. People, 16 Mich., 147.*

*A. Millard* and *Eldredge & Walker,* for defendant in error.

The suit is, in fact, brought to recover damages for continuing a large number of cattle on the farm, after a prior suit brought for the original trespass, in which the plaintiff

below recovered a judgment, and the same is now pending in this Court on writ of error. The defendant pleaded the general issue, with a notice claiming title to the premises, but on the trial abandoned his defense, and called no witnesses whatever.

The first objection is to the question to the plaintiff, " How long had you been in possession ?" The object was to prove that his possession extended over the whole time, not only of the continuance of the trespass charged, but of the original trespass, and that it was *bona fide*. A *continuance* of the trespass, as charged in the second count, could not be proved without first proving the original trespass; which was the object of these questions; and this was competent, notwithstanding the original trespass was anterior to the time laid in the declaration. No claim was made to *recover damages*, in this suit, for the original trespass, or anything that occurred outside of the time laid in the declaration.

Proof of possession is all that is required in such an action. Though proof of the trespass or *wrongful acts* complained of is not to extend generally beyond the time laid in the declaration, proof of their *effects*, or direct consequences is not thus confined. The plaintiff *must* recover, in this action, for the damage done to the premises for the balance of the season, by the cattle of the defendant during the time laid, or he could not recover for it at all.

There was no error in the ruling of the Court on the taxation of costs—none, at least, of which the plaintiff in error can complain.

The statute gives the plaintiff who recovers, double costs in these cases.—*2 C. L., 3736.* This means twice the amount of single costs.—*Shoemaker v. Nesbit, 2 Rawle, 201; Davison v. Schooley, 5 Halst., 145.* It is true that in New York it has been held in one or more cases that under their

revised statutes double costs meant single costs and one-half in addition. But before the revised statutes the practice was to actually double the costs.—*Patchin v. Parkhurst, 9 Wend. 443.* And it is not the settled practice even since the revised statutes in that State to give single costs and one-half in addition. The construction given to that statute in *Patchin v. Parkhurst* has not been adhered to in the later cases.—*Walker v. Burnham, 7 How. Pr. R., 55.*

When double or treble *damages* are given by statute, they are actually doubled or trebled.—*King v. Havens, 25 Wend., 420.* What reason is there for giving a different construction to the same words in the same statute when applied to costs?

Our statute in certain cases, (as in the present), gives *double* costs. In certain other cases it gives the taxed costs *and one-half in addition.—2 C. L., 5605.* That the language is different is significant that a different thing is meant. The latter are *increased* costs, and not double costs.—*Waring v. Acker, 1 Hill, 673 ; Walker v. Burnham, 7 How. Pr., 55.*

CAMPBELL, CH. J.

Kennedy sued Gilbert before a Justice, for trespass *quare clausum fregit,* and the suit was removed to the Circuit Court for Lenawee County, on plea of title.

The declaration laid the trespass with a *continuando* on the 24th day of June, 1868, and on divers days and times between that day and the commencement of suit, August 4, 1868.

A general question was asked, whether Gilbert put any cattle on the premises during the summer of 1868. This was objected to unless confined within the period named, but the objection was overruled, and testimony was given,

showing the putting of cattle on the premises in the end of April, the driving them off by Kennedy, and their being put back again. A question was then asked, How long did they remain there? This was objected to as not within the declaration, but the objection was overruled and proof admitted of cattle put and found there in May, June, and July, and their continuance. It is urged as error that having laid the trespass with a *continuando*, the plaintiff could not prove any prior trespass, and then prove others either within or without the time, but must elect to prove one anterior, or confine himself within the time alleged.

It was assumed on the argument in reply to this objection, that there had already been a suit determined for the trespasses prior to June 24, and, therefore, it must be held that the evidence of the early trespasses was immaterial. No such fact appears in any responsible form on the record, and no such explanation was given for insisting on the proof, but it was allowed as proper under the issue, and was given as fully as would be required if the suit had been confined to the early transactions.

The rule has been settled for a long time, that under such a declaration the plaintiff must elect, and having proved a trespass before the period in the *continuando*, must go no further. The rule is that he is to be confined not merely to recovering damages for, but to proving no trespass but the one he elects. If he could prove them all, and then recover damages by election, it would give him an unconscientious advantage, and one trespass would be used to aggravate another without any remedy to prevent it, for it would be impossible to keep a jury from making such allowances. The rule, at all events, has become too well settled to be questioned. And the evidence introduced was of aggravated and willful trespasses before June 24th,

of such a nature as to warrant considerable damages. When these had been proved, no attempt was made to explain the proof, as intended for any purpose but damages, if such explanation would have been available. There was then such an election as should have excluded further proof of subsequent grievances.—*Saunders Pl. & Ev.,* "*Trespass,*" *1094; Hume v. Oldacre, 1 Starkie R., 351; 1 Ch. Pl., 846 and notes; 2 Starkie's Ev., 806; 2 Greenlf. Ev.,* § *624.* The doctrine is very fully explained in *Pierce v. Pickens, 16 Mass. R., 470.*

The effect of deviating from this rule was shown by the admission of certain further testimony in regard to the amount of damage which was ostensibly to be confined to injuries done in the interval described, but which in fact was affected by previous acts. The plaintiff, when testifying, was asked: "What was the effect of having Gilbert's cattle on there from the 24th of June to the 4th of August, on the feed and on the farm." Instead of answering this directly, he replied: "At the 24th of June there was no feed on the place; a lot of sheep would have found hard picking. The feed was all fed and gnawed off, and trampled clean to the very roots." This introduced proof of the effects of the previous trespasses; and the next question called out evidence of the damage resulting from this former mischief. Plaintiff was asked: "What was the damage to the farm, and to you, as possessor, done by those cattle of Gilbert's from the 24th of June to August 4th, by reason of feeding off and trampling down the pasture, and thus destroying the feed." To this he answered, "At least one hundred dollars," which was the full extent of the *ad damnum* clause in his declaration, and the amount found by the jury. However harmless or ambiguous this question might have been by itself, yet

when asked in connection with the previous answer, it seems plain that the trampling and destruction of feed previous to June 24th were directly taken into the account.

In connection with this proof of damages during the period of the *continuando*, there was evidence of the future effects of the continued trespasses beyond August 4th, and up to October 12th, when Kennedy turned off Gilbert's cattle and resumed possession. It appeared by Kennedy's testimony that he was not owner of the land, but held a lease in writing, and the Court, under exception, held he was not bound to prove his lease, but that he might prove his rights by parol. There was no testimony of any kind to show the terms or extent of the leasing.

Where a trespass consists of a single act, and the plaintiff proves his possession, he may usually rest there. But when he desires to recover damages for the future, he must show that his title gives him an interest in such damages, and he can recover no damages except such as affect his own rights. It is quite possible to divide up the interests so that the landlord may have the right to sue for one kind of trespass, and the tenant for another, at the same time. Thus in *Cox v. Glue, 5 C. B., 533,* where lands were subject to a right of pasturage during a part of the year, and during that time a trespass was committed by digging holes and setting posts in the soil, it was held the landlord could bring trespass for this, because the right of pasture gave no rights in the subsoil; but it was also held that for a trespass in riding over the ground in a race, the landlord could not sue, as the possessory right in the surface was not in himself. Even a tenant is liable to trespass *quare clausum* to his landlord, if he destroys trees or other things on the ground excepted in his lease.— *Rolls v. Rock, Selwyn's N. P., 1287.* And wherever there is an exclusive right, trespass may be supported for an

injury during its continuance, though the party has not an absolute or entire property in the soil; and though his interest is temporary.—*Harker v. Birkbeck, 3 Burr., 1563; Wilson v. Mackreth, 3 Burr., 1824.* It would be unjust and contrary to all principle to allow any one to recover for more than he has actually been injured. And in the authorities it will be found that every possible species of tenure has come under consideration, in determining the right to recover damages. See authorities collected in *2 Saunder's Pl. and Ev., " Trespass," 1126 and seq.*

We think the lease should have been put in evidence. In regard to damages, it appears to us that there has been some duplicating. If compelled to pay for the value of pasturage, it would seem unjust that a party should be further compelled to pay for what would have grown had not the land been used for that purpose. When a person hires pasturage, he thereby pays for the right of doing whatever damage the use of that right involves. When he does more than would be appropriate to that right, it would amount to waste, and he should pay for that excess in addition.

If all the damage done to the land after June 24th would have been done had any one else occupied the land for keeping stock on it, then the defendant below was only responsible for its fair value for use and occupation, and not for any natural results for which any other occupant would not have been liable. The testimony all tended to prove that the occupation would have been valuable to plaintiff for similar purposes, and that the injury done previous to June 24th would not have prevented this use. If so, it must be assumed that the real permanent injury had all been really committed prior to June 24th, and that damages had been or could be recovered in a separate action on that basis. In other words, if the owner of the

land would have used it for cattle had he resumed possession on June 24th, his animals, according to the laws of nature, could not be expected to be more careful or economical than those of any one else, and would have done just as much mischief. If it would not have been used, and was utterly unfit for use, then there should be no damages for its use, but only for further spoiling it. But the case shows plainly that its value was proven for use, and damages were given for its use, and for the natural result of that use in addition.

As the question of costs may come up hereafter, it is proper to refer to the more important questions raised.

If witnesses are made to attend in good faith, and there is reasonable proof of their necessity, the fact that they are not called, will not prevent taxation for their attendance, where the party had reason from the state of the pleadings to believe he required them. It is not enough that they are material, for it would not be proper to accumulate witnesses too much on the same point. There should be an allowance for all that were actually necessary, as the case appeared while they were retained, if they were called no sooner and kept no longer than the apparent necessity existed.—*Adamson v. Noel, 2 Chitty R., 200; Anonymous, 2 Chitty R., 200; Bagnall v. Underwood, 11 Price, 510.* The affidavits in the present case were too vague. The necessity, as well as materiality, must clearly appear from the affidavits.

We also think that "double costs" under the statute, where there is nothing to qualify the phrase, must be construed, according to the old rule, as meaning single costs, and an addition of one-half. As they belong under our statutes to the party, and not to the officers and witnesses, the statute is of a penal character, and should receive no larger construction than it fairly requires. There is no

statute in England defining how double costs shall be computed, and yet, while damages are actually doubled costs are increased in the manner mentioned in all cases where double costs are given by statute. The rule appears to be ancient, and has not been questioned.—*Bacon's Abridgment,* " *Costs,*" *subd. " Double Costs ;*" *2 Tidd's Pr., 987–8; Deacon v. Morris, 2 Chitty's R., 137 and notes; Staniland v. Ludlam, 4 B. & C., 889 ; Also, note to Milne v. Maclean, 1 C. & P., 17.*

In *Patchin v. Parkhurst, 9 Wend. R., 443,* it is held that the New York statute, from which ours is copied, has this construction. It is there intimated that a different rule prevailed earlier, but there is no trace of it in the decisions. There is also a practical difficulty in construing it otherwise. Prior to the N. Y. Revised Statutes, when costs were doubled, they did not belong to the party.— *McFarland v. Crary, 8 Cow., 258.* The clause in our statute which gives double costs to the party himself *(2 C. L., § 5606)* would not apply to the costs and one-half in addition mentioned in § *5604,* if they are not double costs, but would still leave them the property of the attorney. It is not to be supposed that the introduction of these clauses in such close juxtaposition was unintentional. How this anomalous language orginated we are not informed, but its construction seems well settled, and we think it should now be adhered to.

Judgment must be reversed with costs, and a new trial granted.